Hector A. PENA, Appellant

v.

The STATE of Texas, Appellee

NO. 14–14–00599–CR

Court of Appeals of Texas, Houston (14th Dist.).

Opinion Filed March 2, 2017

Rehearing and Rehearing En Banc Overruled May 9, 2017

Discretionary Review Refused September 27, 2017

**618**

Mark Stevens, Galveston, TX, for Appellant.

Allison Lindblade, Galveston, TX, for State.

Panel consists of Justices Jamison, Wise, and Jewell.

## OPINION

Kevin Jewell, Justice

Appellant Hector Pena raises three issues in this appeal of his conviction for criminally negligent homicide. In his first two issues, appellant contends that there is legally insufficient evidence to support the jury's findings on criminally negligent homicide and on use of a deadly weapon. In his third issue, appellant contends that

a prior appeal by the State in this case—on which this court already ruled—is barred by double jeopardy.

We affirm.

## Background [1]

While driving a semi-truck, appellant ran over and killed eleven-year-old Christina Lopez. A grand jury indicted appellant for manslaughter. At trial, the jury was charged on manslaughter and the lesser-included offense of criminally negligent homicide. The jury found appellant guilty of criminally negligent homicide. The jury also answered a special issue—whether appellant used a deadly weapon during the commission of the offense—in the affirmative. The jury assessed four years' confinement as punishment.

Appellant filed a notice of appeal. He also filed a motion for new trial, which challenged the trial court's failure to quash the indictment due to inadequate allegations of recklessness. The trial court granted a new trial, and the State filed an interlocutory appeal of that order. *See State v. Pena*, No. 14-14-00746-CR, 2015 WL 4141101 (Tex. App.–Houston [14th Dist.] July 9, 2015, no pet.) (mem. op., not designated for publication) ("*Pena I*"). This court abated appellant's appeal pending resolution of the State's interlocutory appeal. This court reversed the order granting a new trial and remanded to the trial court with instructions to reinstate the judgment. *Id.* at *7. The State then moved to reinstate appellant's direct appeal of his conviction. This court granted the motion and reinstated appellant's appeal.

---

1. A detailed recitation of facts appears in this court's opinion in an earlier appeal of the same case. *See State v. Pena*, No. 14-14-00746-CR, 2015 WL 4141101, at *1–3 (Tex. App.–Houston [14th Dist.] July 9, 2015, no pet.)

Appellant's challenges to his conviction are now ripe for review.

## Standard of Review

In his first two issues, appellant challenges the sufficiency of the evidence supporting two of the jury's findings: (1) whether appellant was guilty of criminally negligent homicide; and (2) whether appellant committed the crime with a deadly weapon. Reviewing courts apply a legal-sufficiency standard in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). Under this standard, we examine all the evidence adduced at trial in the light most favorable to the verdict to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *Criff v. State*, 438 S.W.3d 134, 136–37 (Tex. App.–Houston [14th Dist.] 2014, pet. ref'd). This standard applies to both direct and circumstantial evidence. *Criff*, 438 S.W.3d at 137. Accordingly, we will uphold the jury's verdict unless a rational factfinder must have had a reasonable doubt as to any essential element. *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009); *West v. State*, 406 S.W.3d 748, 756 (Tex. App.–Houston [14th Dist.] 2013, pet. ref'd).

Appellant's third issue regarding jeopardy principles is purely a legal question. We decide that issue as a matter of law. *State*

---

(mem. op., not designated for publication). We incorporate those facts here and will discuss other facts, when relevant, in addressing appellant's arguments.

*v. Johnson*, 948 S.W.2d 39, 40 (Tex. App.–Houston [14th Dist.] 1997, no pet.).

## Analysis

### A. Double Jeopardy

We. address appellant's third issue first, because it raises a jurisdictional question. Appellant argues that "[t]he State's appeal is jeopardy barred." This is a repetition of an argument appellant made—and we rejected—in the State's earlier interlocutory appeal. *See Pena I*, 2015 WL 4141101, at *5 (overruling Pena's "cross-issue" that the State's appeal was jeopardy barred). We conclude the issue is moot because the only appeal before us is by appellant, not the State, and so appellant is not "threaten[ed] ... with an impermissible, successive trial." *State v. Blackshere*, 344 S.W.3d 400, 406 (Tex. Crim. App. 2011).

We overrule appellant's third issue.

### B. Criminally Negligent Homicide

The jury found appellant guilty of criminally negligent homicide. In his first issue, appellant challenges the legal sufficiency of the evidence to support the jury's finding, both as to the required culpable mental state for criminal negligence and as to causation.

#### 1. Mental State

A person commits criminally negligent homicide if he causes the death of another by criminal negligence. Tex. Penal Code § 19.05(a). Criminal negligence occurs when the person ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. *Id.* § 6.03(d). The offense of criminally negligent homicide "involves inattentive risk creation, that is, the actor ought to be aware of the risk surrounding his conduct or the results thereof but fails to perceive the risk." *Stadt v. State*, 182 S.W.3d 360, 364 (Tex. Crim. App. 2005)

(internal quotation omitted). The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances, as viewed from the actor's standpoint. Tex. Penal Code § 6.03(d). In short, to prove a defendant is guilty of criminally negligent homicide, the State is required to prove beyond a reasonable doubt that the defendant's failure to perceive. a substantial risk of death grossly deviated from an ordinary standard of care. *See Tello v. State*, 180 S.W.3d 150, 156 (Tex. Crim. App. 2005).

Here, appellant contends that the State failed in its burden and the jury findings lack legally sufficient support because he saw Lopez sitting by the side of the road as he turned his truck onto the same road. Because criminally negligent homicide requires the State to prove that an accused failed to perceive a substantial risk of death, appellant argues that his perception of Lopez negates the jury's finding.

Appellant mischaracterizes the inquiry. The offense of criminally negligent homicide involves "inattentive risk creation." *Stadt*, 182 S.W.3d at 364. The question is not whether appellant perceived Lopez; the question is whether appellant ought to have been aware that the attendant circumstances of his situation created a substantial and unjustifiable risk that Lopez could die as a result of his conduct. *See Montgomery v. State*, 369 S.W.3d 188, 193 (Tex. Crim. App. 2012). Thus, if an ordinary person in appellant's position—perceiving Lopez by the side of the road—would have stopped, honked, braked sooner, modified his turning radius, or otherwise acted to avoid a collision, then appellant's failure to do so may suffice to establish a gross deviation from the ordinary standard of care. *Id.*

Properly framed this way, we review the record in the light most favorable to the verdict to determine whether legally sufficient evidence supports the jury's finding that appellant acted with the necessary mental state for criminal negligence.

The State introduced two written statements and two videotaped statements that appellant gave police. Appellant's account of the collision did not materially change at any time. He also provided two hand-drawn diagrams of the collision.

Appellant said that he left his driveway around 7:40 in the morning and that the sun was in his eyes as he drove east on 30th Avenue. As he approached the intersection of 30th Avenue and 26th Street, appellant saw Lopez sitting on the northbound side of 26th Street (but south of 30th Avenue), partially in the grass. Appellant intended to turn right onto 26th Street, meaning Lopez would have been on the left side of 26th Street as appellant made the turn. 26th Street is a two-lane road with no curbs, sidewalks, or formal bus stops. According to appellant, he saw Lopez there every morning, waiting for the school bus, and he had never come close to hitting her. Appellant had driven trucks for sixteen years, without an accident.

Appellant made a wide turn onto 26th Street, driving two to three miles per hour in first gear. He admitted that Lopez was "pretty close" to his truck as he made the turn. He said he thought Lopez would move out of his way. As appellant turned, he lost sight of Lopez, felt his left front tire go off the road into the grass, come back onto the road, and then he felt his left back tire bump over something. He looked in his rearview mirror, saw a girl lying in the street, and stopped. The truck left a one-foot-long skid mark. Appellant admitted that he did not honk his horn at any point, because "[t]he truck is noisy."

When asked if he misjudged the distance between Lopez and the truck, appellant told police: "Yes, sir, probably."

In the diagrams provided to police, appellant drew on a printed street map the path he took as he left his house, where he was when he first saw Lopez, the arc of the truck's turn, and where he hit Lopez. The diagrams align with appellant's statements to police.

Based on appellant's statements and description of the collision, as well as the written diagrams, a rational jury could have determined beyond a reasonable doubt that appellant ought to have been aware of a substantial and unjustifiable risk that his truck would collide with Lopez as she sat on the side of the road.

A rational jury also could have found beyond a reasonable doubt that appellant's failure to perceive this risk was a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from appellant's position. In this court and at trial, the parties hotly contested whether appellant made a "proper" right-hand turn. The State argued that a driver is supposed to come as close as practicable to the right-hand curb; the defense's expert said that commercial drivers are supposed make the turn as wide as practicable in order to make the turn while remaining in the lane of traffic from which the driver is turning. In other words, the State argued that appellant should have swung to the left (into the lane of oncoming traffic on 30th Avenue) before making the right turn into the southbound lane of 26th Street; the defense argued that appellant should have stayed in the right lane of 30th Avenue and turned wide into the northbound lane of 26th Street before entering the southbound lane of 26th Street.

The parties' disagreement is ultimately irrelevant to our analysis of whether legally sufficient evidence supports the jury's finding that appellant acted with criminal negligence. While the inquiry requires a gross deviation from the standard of care that an ordinary person would exercise, that standard of care is determined "under all the circumstances as viewed from the actor's standpoint." Tex. Penal Code § 6.03(d).

In answering this inquiry, we find *Mitchell v. State* persuasive. *See Mitchell v. State*, 321 S.W.3d 30 (Tex. App.–Houston [1st Dist.] 2010, pet. ref'd). In *Mitchell*, the driver of a dump truck collided with a Jeep stopped at an intersection, then continued through the intersection, striking and killing a bystander. *Id.* at 32–33. The evidence established that the driver never braked, though he admitted that he had seen the Jeep. *Id.* at 39–40. The jury convicted the driver of criminally negligent homicide, and the court of appeals held there was legally sufficient evidence to support the jury's verdict: "[t]he evidence further showed that appellant, with his specialized training, should have been aware of the increased risk of this conduct given the size of his vehicle and its decreased stopping abilities." *Id.*

Under the circumstances as viewed from appellant's standpoint, as an experienced commercial truck driver making a familiar turn onto a two-lane road where a child was present, the standard of care required that appellant make sure he could turn without hitting Lopez—regardless whether he made a "proper" or "improper" turn. Appellant saw Lopez in or near the potential turn radius, he failed to honk or otherwise warn Lopez of his approach, and he failed to stop his forward progression after losing sight of Lopez. From this, the jury could reasonably infer that appellant ought to have been aware that his truck could hit and kill Lopez, and that appellant's failure to perceive this risk was a gross deviation from the standard of care.

■ We conclude that, viewing the evidence in the light most favorable to the verdict, the jury could have found, beyond a reasonable doubt, that appellant's failure to perceive the risk of death resulting from his actions was "so grievous that the defendant should be held criminally liable." *Tello*, 180 S.W.3d at 158–59 (Cochran, J., concurring) (emphasizing the distinction between civil negligence and criminal negligence). We hold that there is legally sufficient evidence that appellant possessed the culpable mental state of criminal negligence. *See Mitchell*, 321 S.W.3d at 40; *Laster*, 275 S.W.3d at 518.

## 2. Causation

Appellant also argues that there is legally insufficient evidence to support a finding that appellant's negligence caused Lopez's death. We disagree.

Appellant does not dispute that Lopez died from multiple blunt trauma as a result of contact with appellant's truck. Rather, appellant contends that: (1) appellant's conduct, regardless how negligent, did not cause Lopez's death; and (2) Lopez's death was not foreseeable. We reject both assertions.

The parties offered competing theories at trial as to how and where appellant's truck hit Lopez. The State's theory, as supported by the medical examiner, was that appellant's truck hit Lopez at a slow speed, knocking her down and dragging her under the truck, at which point, her hair was caught on the battery box and the left rear wheel ran over her back.

Appellant's defensive theory, on the other hand, was that the front end of the truck did not hit Lopez. According to appellant's accident reconstruction expert, Lopez intentionally reached under the

moving semi-truck as it passed by to grab her jacket or a fallen candy bar. By reaching into the space between the front wheel and the steps covering the battery box she became entangled. The expert testified that he believed the medical examiner's theory was wrong, because there was undisputedly no evidence of any transfer of genetic material or other evidence to the front bumper. The first instance of any physical evidence of Lopez's contact with the truck was a clump of hair caught in the battery box, located behind the front left wheel and below the steps that lead to the truck's cab.

Based on this evidence, appellant argues that "the contact between the girl and the truck ... involv[ed] unforeseeable action or movement on the part of the child," and that Lopez's death "was caused independently by ... the child's unforeseen actions." This argument describes appellant's concurrent-causation theory, which was included in the charge at appellant's request and argued to the jury. Under this theory, appellant argued that the jury should acquit him of both manslaughter and criminally negligent homicide, based on a lack of causation regardless of any question of culpable mental state.

The relevant code provision defines causation to mean that "[a] person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the [defendant] clearly insufficient." Tex. Penal Code § 6.04(a). Thus, under section 6.04, a "but for" causal connection must exist between the defendant's conduct and the resulting harm to find the defendant criminally responsible.

 If a concurrent cause is present, two possible combinations exist to satisfy this "but for" requirement: (1) the defendant's conduct may be sufficient by itself to have caused the harm, regardless of the existence of a concurrent cause; or (2) the defendant's conduct and the other cause together may be sufficient to have caused the harm. *Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986). But if the concurrent cause is clearly sufficient, by itself, to produce the result and the defendant's conduct, by itself, is clearly insufficient, then the defendant cannot be convicted. *Id.*

The charge in this case included an instruction on concurrent causation that tracked the Texas Penal Code's language quoted above. There was no specific charge question on concurrent causation, but the trial court instructed the jury:

> [I]f you find that the concurrent cause was clearly sufficient to produce the result and the conduct of the defendant clearly insufficient, then you will find the defendant not criminally responsible and say by your verdict "Not Guilty."

By finding appellant guilty of criminally negligent homicide, the jury necessarily found that any concurrent cause was not clearly sufficient to cause Lopez's death. *See Samuels v. State*, 785 S.W.2d 882, 886 (Tex. App.–San Antonio 1990, pet. ref'd). We conclude that, viewing the evidence in the light most favorable to the verdict, a reasonable trier of fact could have found beyond a reasonable doubt that Lopez would not have died but for appellant's conduct.

First, the jury could have rejected the existence of any concurrent cause at all. The jury could have credited the medical examiner's testimony that the truck hit Lopez at a speed fast enough to knock her down but slow enough that there was no transfer of genetic material. *See Marines v. State*, 292 S.W.3d 103, 106 (Tex. App.–Houston [14th Dist.] 2008, pet. ref'd) (jury

is exclusive judge of credibility of witnesses and weight to be given to testimony, and is exclusive reconciler of conflicts in evidence). In that scenario, appellant's concurrent cause proposition would lack legally sufficient evidentiary support, and appellant's actions alone would be the "but for" cause of death.[2]

Second, the jury could have reasonably concluded that appellant's conduct was alone sufficient to have caused Lopez's death, regardless whether a concurrent cause existed. *Robbins*, 717 S.W.2d at 351. The jury could have credited the accident reconstruction expert's testimony that Lopez was hit by the battery box while reaching under the semi-truck, but also credited the State's argument that appellant turned too widely—placing Lopez unavoidably in the truck's path, no matter what she did or how she moved.

Third, the jury may have reasonably believed that appellant's conduct and Lopez's alleged conduct together were sufficient to have caused Lopez's death. *Id.* Based on appellant's own statements that he saw Lopez and did not honk his horn, and on his diagrams detailing his turn radius, the jury could have concluded that any movement or action by Lopez, alone, was insufficient to cause her death. *Id.*

We therefore reject appellant's argument that the State failed to prove, beyond a reasonable doubt, that appellant was the "but for" cause of Lopez's death.

We also reject appellant's suggestion that Lopez's death was not a foreseeable consequence of his actions. As support for his causation argument, appellant singular-

ly relies on *Williams v. State*, a decision based on a foreseeability analysis. *See Williams v. State*, 235 S.W.3d 742, 764 (Tex. Crim. App. 2007) ("[S]ome element of foreseeability limits criminal causation just as it limits principles of civil 'proximate causation.' ").

We find *Williams* plainly distinguishable. There, the court concluded that a mother could not be held criminally responsible for her children's deaths when the chain of causation was too "lengthy" to sustain the conviction. *See id.* at 763–65 (holding evidence was insufficient to support criminal liability for fire that ensued after defendant left her children under boyfriend's supervision in home without utilities, in room with lit candle, without reason to suspect that boyfriend would leave children alone with candle still burning after they went to sleep). Appellant invokes this notion in discounting the State's supposed "numerous 'but for' scenarios by which the defendant ... might have avoided" the resulting harm. But he raises this point in disputing the State's argument at trial that appellant could have avoided the collision by going one block further to make a turn onto a wider street. This, he says, is an impermissible focus on hindsight and cannot support an affirmative finding on causation.

We do not base any part of our causation analysis on the State's trial theory that appellant could have taken a different route. There is no attenuated chain of causation. There is but one link—appellant making the wide turn and hitting Lopez.

---

2. Appellant alludes to the fact that the officer responsible for writing the accident report drafted four versions over two years. The first three listed Lopez as a "contributing factor" to the accident (though it was miscoded in the first report), but the fourth one—completed the week before trial—deleted reference to Lopez as a contributing factor. Any conflicts in the accident reports, and any credibility determination of the testifying officer, were for the jury to resolve. *See Marines v. State*, 292 S.W.3d 103, 106 (Tex. App.–Houston [14th Dist.] 2008, pet. ref'd).

We conclude that legally sufficient evidence supports the jury's finding that appellant caused Lopez's death.

\* \* \*

Viewing the evidence in the light most favorable to the verdict, we conclude the jury could have found that appellant possessed the culpable mental state of criminal negligence when he caused Lopez's death, and we hold that the evidence is legally sufficient to support the judgment of conviction.

We overrule appellant's first issue.

## C. Use of a Deadly Weapon

In his second issue, appellant argues that there is legally insufficient evidence to support the jury's finding that appellant used a deadly weapon during the commission of the offense. As discussed above, we review the record to determine whether, after viewing the evidence in the light most favorable to the jury's verdict, a rational trier of fact could have found beyond a reasonable doubt that appellant's truck was used as a deadly weapon. *Brister v. State*, 449 S.W.3d 490, 493 (Tex. Crim. App. 2014).

An affirmative deadly weapon finding has a negative impact on a defendant's eligibility for community supervision, parole, and mandatory supervision. *Sierra v. State*, 280 S.W.3d 250, 254 (Tex. Crim. App. 2009). As relevant here, an affirmative deadly weapon finding also increases the range of punishment a jury may assess. *See Chambless v. State*, 411 S.W.3d 498, 501–02 (Tex. Crim. App. 2013). Criminally negligent homicide is classified as a state-jail felony, which carries a punishment range of confinement for a term of 180 days to two years. Tex. Penal Code §§ 12.35(a), 19.05(b). But if a deadly weapon was used or exhibited during the commission of a state-jail felony, the offense carries a punishment range of two to ten years' confinement. *Id.* § 12.35(c)(1). A "deadly weapon" is defined to be either "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17).

Because a semi-truck is not designed to inflict death or serious injury, it is the second part of the definition of "deadly weapon" that is relevant here— whether a semi-truck is, in the manner of its use, *capable* of causing death or serious injury. *See Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003) (a vehicle can be a deadly weapon if it is driven in a manner that endangers lives). The danger of death or serious injury must be more than simply hypothetical. *See Drichas v. State*, 175 S.W.3d 795, 797–98 (Tex. Crim. App. 2005).

We undertake a two-part analysis in determining whether a rational trier of fact could have found beyond a reasonable doubt that appellant used his truck as a deadly weapon: first, we "evaluate the manner in which the defendant used the motor vehicle during the felony"; and second, we "consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Sierra*, 280 S.W.3d at 255.

As to the first inquiry, there is no specific standard for assessing a defendant's manner of driving, though the Court of Criminal Appeals has examined whether a defendant's driving was reckless or dangerous. *See id.* We assume without deciding that appellant was not driving recklessly, taking into consideration that the jury acquitted appellant of manslaughter. *See* Tex. Penal Code § 19.04(a) (manslaughter is recklessly causing the death of another).

But a rational fact-finder could conclude that appellant was driving dangerously

when he made the wide right-hand turn. Appellant stated that he saw Lopez on the left-hand side of the road as he made his turn, but that he thought she would get out of the way of his truck. It is undisputed that appellant made such a wide turn that his left front wheel drove off the roadway and went into the grass. The State introduced a video of five reconstructions, which depicted a truck like appellant's turning right into a parking lot marked with the dimensions of 30th Avenue and 26th Street. This video and the accompanying testimony indicated that a truck could make a narrower turn onto 26th Street. Viewing the evidence in the light most favorable to the verdict, the jury could reasonably conclude that appellant could have avoided hitting Lopez, but failed to do so, and thus was driving in a dangerous manner.

 Appellant disputes that the manner and means by which he used his truck was dangerous or reckless, because he was driving slower than five miles per hour and he took what he considered to be adequate precautions. First, we note that there is no requirement that the State prove that the defendant must have the specific intent to use an instrument as a deadly weapon. *See Drichas,* 175 S.W.3d at 798.

Moreover, a rational jury could conclude that maneuvering a semi-truck as appellant did—at any speed—is dangerous when a child is in the vehicle's path. Other courts have rejected arguments similar to appellant's. *See, e.g., Dobbins v. State,* 228 S.W.3d 761, 768 (Tex. App.–Houston [14th Dist.] 2007, pet. dism'd) (citing *United States v. Hoffman,* 9 F.3d 49, 50 (8th Cir. 1993) (per curiam) (rejecting argument that there was no risk of serious bodily injury in causing slow-speed automobile collisions and stating "a risk of this kind of injury is inherent in the automobile accidents")); *Pena v. State,* No. 07-15-00016-

CR, 2015 WL 6444831, at *3 (Tex. App.–Amarillo Oct. 22, 2015, no pet.) (mem. op., not designated for publication) (finding testimony that vehicle was capable of causing death or serious injury, even when driven at slow speed, to be legally sufficient evidence supporting deadly weapon finding); *Duchan v. State,* No. 14-06-00232-CR, 2007 WL 43775, at *3–4 (Tex. App.–Houston [14th Dist.] Jan. 9, 2007, pet. ref'd) (not designated for publication) (rejecting argument that driver's slow speed rendered evidence insufficient to prove vehicle's use was capable of causing death or serious bodily injury).

Finally, while appellant contends he took "adequate precautions," he does not identify any such precautions, other than driving slowly, and he admitted he did not honk his horn as he approached Lopez or brake after losing sight of Lopez. From this, the jury could have inferred that appellant did not take adequate precautions to avoid hitting Lopez. *See Mitchell,* 321 S.W.3d at 40 (evidence that driver never applied brakes supported inference that driver did not take evasive action). Appellant's argument does not persuade us that a rational factfinder must have had a reasonable doubt as to whether appellant used his truck in a dangerous manner. *See Sierra,* 280 S.W.3d at 255.

 As to the second inquiry—whether appellant's truck was capable of causing death or serious bodily injury—we conclude that a rational jury could answer in the affirmative. Appellant never disputes that his semi-truck was capable of causing death. The three-axle truck weighed between 15,000 to 17,000 pounds and measured 28.6 feet long. Lopez died as a result of the collision. Anything, including a motor vehicle, that is actually used to cause the death of a human being is, by definition, "capable of causing death" and thus a deadly weapon. *See Tyra v. State,* 897 S.W.2d 796, 798 (Tex. Crim. App. 1995);

*Ivie v. State*, 905 S.W.2d 701, 702 (Tex. App.–Houston [14th Dist.] 1995, no pet.).[3]

In sum, the jury rationally could have found that appellant's truck was capable of causing death, he used the truck while committing the offense of which the jury found him guilty, and that use posed a danger to lives that was real and more than hypothetical. *See Drichas*, 175 S.W.3d at 798. We hold that, viewed in the light most favorable to the verdict, the evidence is legally sufficient to support the jury's finding that appellant used a deadly weapon.

We overrule appellant's second issue.

### Conclusion

Having overruled appellant's issues, we affirm the trial court's judgment.

---

3. Appellant states that "[a]lmost anything 'can' be a deadly weapon, given sufficient ingenuity in draftsmanship," suggesting that a vehicle that kills someone may or may not be considered a deadly weapon, depending on the circumstances. He cites *Johnston v. State* to urge us to consider the particular circumstances of an alleged deadly weapon use. *See Johnston v. State*, 115 S.W.3d 761 (Tex. App.– Austin 2003), *aff'd*, 145 S.W.3d 215 (Tex. Crim. App. 2004). In *Johnston v. State*, the Austin Court of Appeals found that a cigarette used to intentionally burn a child was not a deadly weapon, in the charge of causing bodily injury. *Id.* at 761, 764. The child, however, did not die in *Johnston*, and so appellant's reliance on the case is unpersuasive.