

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00346-CR
No. 02-23-00347-CR

———————————————

JADEN WALKER, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 462nd District Court
Denton County, Texas
Trial Court Nos. F21-2457-462, F21-2458-462

Before Womack, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

Around lunchtime on Saturday, March 27, 2021, several drivers on Farm to Market Road 423 (FM 423)—a busy north-south thoroughfare with three lanes in each direction—saw a blue Dodge Charger and a silver Nissan Infiniti speeding, weaving in and out of traffic, and racing each other while heading south. More than one of the neighboring drivers observed at the time—to themselves or to their passengers—that the Charger's driver was going to cause an accident.

Jacquelyn Buhler—accompanied by her husband, Clarence Buhler—was driving northbound on FM 423 in their Lexus SUV and moved into the left-turn lane at the intersection of FM 423 and Del Webb Boulevard. As their northbound SUV began to make the left turn, it clipped the southbound speeding Charger, which had swerved to the right to try to avoid hitting the SUV. The speeding Infiniti then collided with the SUV.[1] The Buhlers died at the scene,[2] and an ambulance transported nineteen-year-old Appellant Jaden Walker (the Charger's driver), his twin

---

[1] The collision occurred in a portion of Frisco that is in Denton County.

[2] Clarence died immediately, but Jacquelyn briefly survived the collision. The autopsy reports listed the Buhlers' causes of death as blunt force injuries due to "a motor vehicle/motor vehicle collision," with the manner of their deaths an accident— one of the five manner-of-death categories that also includes natural, suicide, homicide, and undetermined. The medical examiner testified that a motor vehicle collision death would be considered a homicide only if there were "indisputable proof that it was an intentional event."

sister (the Infiniti's driver), and their younger sister (the Infiniti's passenger) to a hospital.

The State indicted Walker for manslaughter and racing on a highway in two counts in trial court cause number F21-2457-462 (appellate cause number 02-23-00346-CR), alleging Jacquelyn's death, and in two counts in trial court cause number F21-2458-462 (appellate cause number 02-23-00347-CR), alleging Clarence's death. *See* Tex. Penal Code Ann. § 19.04(a); Tex. Transp. Code Ann. § 545.420(a)(1), (b)(2), (h). At trial, the neighboring drivers, their passengers, and the lead investigator testified that Walker had been driving recklessly, and the trial court admitted into evidence dashboard camera video from several witnesses' vehicles and surveillance video from a nearby home showing the events described above and supporting the witnesses' testimonies.

A jury found Walker guilty of all four counts; found that he had used a deadly weapon (his vehicle); sentenced him to thirty-three months' confinement on each manslaughter count and to ten years' confinement and a $10,000 fine on each racing count; and recommended suspending the racing sentences and placing Walker on community supervision for those two counts. *See* Tex. Penal Code Ann. § 12.33 (setting out second-degree-felony punishment range of two to twenty years' confinement and up to a $10,000 fine); Tex. Code Crim. Proc. Ann. art. 42A.055(a) (setting out jury-recommended community-supervision requirements). The trial court

sentenced Walker accordingly and—for each racing count—placed him on ten years' community supervision and probated the fine.

In three issues, Walker argues that the evidence is insufficient to support his manslaughter convictions as a primary actor, that the trial court erred by instructing the jury on the law of parties for the manslaughter counts, and that his prosecution for two deaths arising out of a single race violates his Double Jeopardy rights. The State concedes that Walker could be convicted for only one instance of racing.[3] We agree and will vacate the street-racing count in trial court cause number F21-2458-462 (appellate cause number 02-23-00347-CR).

We overrule Walker's remaining two issues because the evidence is sufficient to support his manslaughter convictions as a primary actor, and we will affirm the trial court's judgment in cause number F21-2457-462 (appellate cause number 02-23-00346-CR) and will affirm as modified the trial court's judgment in trial court cause number F21-2458-462 (appellate cause number 02-23-00347-CR). *See* Tex. R. App. P. 43.2(a)–(b).

## II. DISCUSSION

In his first two issues, Walker challenges his manslaughter convictions, arguing that the evidence is insufficient to establish that he recklessly caused the Buhlers' fatal injuries as a primary actor and that the evidence is insufficient under the law of parties

---

[3]We are not bound by any concessions by the parties on a legal issue. *See Oliva v. State*, 548 S.W.3d 518, 520 (Tex. Crim. App. 2018).

4

because manslaughter is a result-oriented offense and there is no evidence suggesting that he intended or desired to cause anyone's death. In his third issue, Walker raises his Double Jeopardy challenge.

## A. Sufficiency

We will address Walker's sufficiency complaints first.

### 1. Standard of review and applicable law

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The law as authorized by the indictment means the statutory elements of the offense as modified

5

by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021).

Under the Texas Penal Code, a person commits manslaughter "if he recklessly causes the death of an individual." Tex. Penal Code Ann. § 19.04(a). A person acts recklessly or is reckless "with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.* "Manslaughter is a result-oriented offense: the mental state must relate to the results of the defendant's actions." *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013).

Regarding causation, the Penal Code states that "[a] person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." Tex. Penal Code Ann. § 6.04(a). The Penal Code further explains that a person is criminally responsible for causing a result "if the only difference between what actually occurred and what he desired, contemplated, or risked is that: (1) a different offense was committed; or (2) a different person or property was injured, harmed, or otherwise affected." *Id.* § 6.04(b). Under Section 6.04, a "but for" causal connection

6

must exist between the defendant's conduct and the resulting harm to find the defendant criminally responsible. *Pena v. State*, 522 S.W.3d 617, 624 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). If a concurrent cause is clearly sufficient, by itself, to produce the result and the defendant's conduct, by itself, is clearly insufficient, then the defendant cannot be convicted. *Id.*

Walker's manslaughter counts alleged that on or about March 27, 2021, Walker "recklessly *cause[d]* the death[s]"[4] of, respectively, Jacqueline and Clarence,

> by driving a motor vehicle on a busy roadway at an excessive speed *or* weaving in and out of traffic *or* failing to keep a proper look out *or* disregarding a traffic control device *or* driving a motor vehicle in a manner to catch or pass another vehicle when it is unsafe to do so.

[Emphases added.] For a result-oriented offense like manslaughter, *see Britain*, 412 S.W.3d at 520, variances between manner-and-means allegations are not material and do not inform the hypothetically correct jury charge or implicate sufficiency. *See Hernandez v. State*, 556 S.W.3d 308, 314, 327 (Tex. Crim. App. 2017) (op. on reh'g); *cf.* Tex. Code Crim. Proc. Ann. art. 21.15 (requiring indictment to allege the act or acts relied upon to constitute recklessness). Additionally, when, as here, the jury returns a general guilty verdict on an indictment charging alternate methods of committing the same offense, the verdict will stand if the evidence suffices to support that finding based on at least one of the valid theories, even if the trial court erred by submitting

---

[4]Although Walker contends that the State failed to allege causation, the indictments clearly contain an allegation that he caused the Buhlers' deaths.

7

the other theories to the jury. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012) (op. on reh'g).

In the jury charges, the trial court provided the above list of alternate methods to find Walker liable as a "Primary Actor" for manslaughter based on recklessness and then required the jury to consider Walker's liability "as [a] Party" if the jury did not find that the State had proved beyond a reasonable doubt his liability as a primary actor. *See* Tex. Penal Code Ann. § 7.01(a) ("A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both.").[5]

To find Walker liable as a party, the jury had to determine (1) that Walker's sister—the Infiniti's driver—had caused the Buhlers' deaths by one or more of the same actions alleged in his manslaughter indictments; (2) that his sister had done so recklessly; (3) that Walker had "solicited, encouraged, directed, aided, or attempted to aid [his sister] to commit the offense of manslaughter"; and (4) that Walker had "acted with the intent to promote or assist the commission of the offense of manslaughter by [his sister]." *See id.* § 7.02(a)(2) (stating that a person is criminally responsible for an offense committed by another's conduct if "acting with the intent

---

[5]A law-of-parties instruction is appropriate when the evidence shows that the defendant's conduct alone was not sufficient to prove the offense but was dependent on another's conduct. *Brown v. State*, 716 S.W.2d 939, 944 (Tex. Crim. App. 1986). The instruction is permissible if the evidence raises both the theory that the defendant did the act charged and the theory that another person participated with the defendant in doing that act. *Id.*

8

to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense"). That is, for the jury to convict Walker as a party, the State had to additionally prove beyond a reasonable doubt that Walker had intentionally acted to help his sister cause the Buhlers' deaths—a greater culpable mental state than required to convict him as a primary actor. *See Nava v. State*, 415 S.W.3d 289, 298–99 (Tex. Crim. App. 2013) ("The words 'acting with intent to promote or assist the commission of the offense' clearly mean, at a minimum, that a defendant must act intentionally with respect to the result elements of a result-oriented offense.").

### 2. Evidence

As set out in our introduction, several witnesses described Walker's reckless driving leading up to the collision; another witness described the SUV as having been "T-boned," and the jury viewed dashboard and surveillance videos that supported these descriptions. Additional evidence presented to the jury further established Walker's speeding, his reckless disregard that his driving behavior might injure or kill someone, and his awareness of that risk:

- Frisco Police Officer Jeremy Turner testified that the speed limit on FM 423 that day had been fifty-five miles per hour.[6] At the crash scene, Walker told Officer

---

[6]A city traffic engineer testified that the city's traffic pattern calculations and signals presumed that traffic would move at the speed limit.

9

Turner that he had been driving sixty miles per hour and that the Buhlers' SUV had turned in front of his car.[7]

- When Frisco Police Officer Jason Sorrell, the collision's lead investigator, spoke with Walker later by phone, Walker told him that he had been driving fifty-five miles per hour. Officer Sorrell explained the State's time-and-distance photos showed where the Charger would have been if it had been going fifty-five miles per hour in the five seconds before impact and stated that the collision would not have occurred if Walker had been driving the speed limit.

- Robert Parker, whose dashboard camera video showed the collision from behind, testified that as the Buhlers' SUV was turning left, the Charger swerved to the right to get out of the SUV's way, and the vehicles connected—the Charger's front panel to the SUV's front bumper—and then spiraled out, "[a]nd the [Infiniti] was caught up in the spiraling SUV."

- Officer Sorrell testified that speed is a factor in crash causation; that a motor vehicle is a deadly weapon; that in this case, the Charger was a deadly weapon "[j]ust based on speed"; and that the Charger had caused the Buhlers' deaths.[8] By

---

[7]On Officer Turner's body camera video, Walker can be heard saying, in a clearly distraught manner, "They kept going. They just kept going. I went this way, they kept going."

[8]Officer Sorrell also testified that Walker had been reckless in weaving in and out of traffic, in failing to keep a proper lookout, in disregarding a traffic control device, in driving his vehicle in a manner to catch or pass another vehicle when it was

10

his calculations—derived independently from the vehicles' airbag control module (ACM) data set out below—before impact, the Charger had been going 114 miles per hour and the Infiniti had been going eighty-seven miles per hour. He also took post-crash photos of how the three vehicles intersected.

- Frisco Police Officer Jason Hinkle, one of the crash-reconstruction investigators, downloaded the ACM data from the subject vehicles and testified that the data showed that the Charger had been traveling at 111 miles per hour five seconds before the collision, then increased to 114 miles per hour, and that at one second before the collision, the Charger's engine and accelerator pedal were both at 100 percent. The ACM data also showed that the Infiniti had been going ninety miles per hour until one second before the collision, when the brakes were activated, reducing its speed to eighty-three miles per hour.

---

unsafe to do so, and that each of these actions—and his driving at an excessive rate of speed—applied to the Buhlers' deaths. However, on cross-examination, he agreed that whether Walker had previously been weaving in and out of traffic had not affected the collision and that the Buhlers had been turning on a flashing yellow, which gave through traffic the right-of-way, meaning that Walker had therefore not disregarded a traffic light. *See* Tex. Transp. Code Ann. § 545.152 (stating that to turn left at an intersection, "an operator shall yield the right-of-way to a vehicle that is approaching from the opposite direction and that is in the intersection or in such proximity to the intersection as to be an immediate hazard"). Contrary to Officer Sorrell's testimony, however, more than one witness testified that the light had been yellow before the Charger reached the intersection and that the light had turned red before the Charger crossed the intersection.

- Frisco Police Officer Thomas Mrozinski Jr. testified that Chapter 8 of the *Texas Driver Handbook*, entitled "Speed and Speed Limits," contains warnings that any type of racing of vehicle against vehicle is "obviously prohibited" and carries a criminal penalty and that every driver is presumed to know this when they have a Texas driver's license. Officer Turner reviewed Walker's Texas driver's license at the scene.

### 3. Analysis

In his first issue, Walker argues that by pleading five acts in the manslaughter indictments, the State was required to show that at least one of the five acts had brought about the Buhlers' deaths. In his second issue, he contends that because there is no evidence suggesting that he intended to cause anyone's death, the evidence is insufficient to justify a guilty verdict under the law of parties.

As set out above, the record establishes beyond a reasonable doubt that under the hypothetically correct jury charge for manslaughter, a result-oriented offense, Walker recklessly caused the Buhlers' deaths. *See Hernandez*, 556 S.W.3d at 314, 327. Specifically, the evidence showed that Walker's recklessly driving at an excessive rate of speed caused the Buhlers' deaths when he unsuccessfully swerved past their turning vehicle at 114 miles per hour, and the initial collision with his speeding vehicle positioned the Buhlers' SUV to be "T-boned" by his sister's speeding Infiniti.[9] *See*

---

[9]The evidence also showed that Walker had driven in a manner to pass another vehicle when it was unsafe to do so (his attempting to swerve around the Buhlers'

12

Tex. Penal Code Ann. § 6.04(a); *Sanchez*, 376 S.W.3d at 775. We overrule Walker's first issue.

Further, because the evidence is sufficient to support Walker's conviction based on his actions as a principal, we overrule his second issue on the law of parties. *See Ladd v. State*, 3 S.W.3d 547, 564–65 (Tex. Crim. App. 1999) "[W]here . . . the evidence clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless."); *Cathey v. State*, 992 S.W.2d 460, 466 (Tex. Crim. App. 1999) ("Even where proper objection is made at trial, we have held that where, as in the instant case, the evidence clearly supports a defendant's guilt as the primary actor, error in charging on the law of parties was harmless.").

## B. Double Jeopardy

In his third issue, Walker contends that two convictions for a single street race violated his rights against Double Jeopardy because the offense's gravamen is the race itself, not the number of individuals harmed or killed as a result.

### 1. Preservation

As he admits, Walker did not raise a Double Jeopardy objection at trial. However, a defendant may raise a Double Jeopardy claim for the first time on appeal "when the undisputed facts show the [D]ouble [J]eopardy violation is clearly apparent

---

SUV). However, his weaving in and out of traffic did not relate to the collision itself, and the evidence showed that he had not failed to keep a proper lookout because he swerved and that he possibly had not disregarded a traffic control device because there was disputed testimony about the light's color when he reached the intersection.

on the face of the record and when enforcement of [the] usual rules of procedural default serves no legitimate state interests." *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000).

A Double Jeopardy claim is apparent on the face of the trial record if resolving the claim does not require further proceedings to introduce additional evidence supporting the claim. *Ex parte Denton*, 399 S.W.3d 540, 544 (Tex. Crim. App. 2013). While the State may have an interest in maintaining a conviction's finality, there is no legitimate interest in maintaining a conviction when the face of the record clearly shows that the conviction was obtained in contravention of constitutional Double Jeopardy protections. *Id.* at 545; *see Gonzalez*, 8 S.W.3d at 643 & n.15 (referencing *Duckett v. State*, 454 S.W.2d 755 (Tex. Crim. App. 1970), in which the court declined to enforce the usual procedural default rules because the two convictions were in the same court, on the same day, before the same judge, and were based on the same evidence).

## 2. Analysis

A Double Jeopardy violation occurs if a defendant is convicted or punished for two offenses that are the same in both law and in fact. *Aekins v. State*, 447 S.W.3d 270, 279 (Tex. Crim. App. 2014). The jury convicted Walker under Texas Transportation Code Section 545.240 of one count of racing on the highway resulting in Jacquelyn's death and one count of racing on the highway resulting in Clarence's death. *See* Tex. Transp. Code Ann. § 545.240. Here, the statute's plain language,

14

which has previously been reviewed by the Texas Court of Criminal Appeals, is determinative. *See Oliva*, 548 S.W.3d at 528 nn.60–61.[10]

Subsection (a)(1) of Transportation Code Section 545.240 states that "[a] person may not participate in any manner in:  a race," which Subsection (b) defines— as pertinent here—as the use of one or more vehicles "in an attempt to outgain or outdistance another vehicle or prevent another vehicle from passing; [or] arrive at a given destination ahead of another vehicle or vehicles."  Tex. Transp. Code Ann. § 545.420(a)(1), (b)(2)(A)–(B).  Subsection (d)[11] explains that "[e]xcept as provided by Subsections (e)–(h), *an offense under Subsection (a)* is a Class B misdemeanor."  *Id.* § 545.420(d) (emphasis added).

Subsection (e) provides that "*[a]n offense under Subsection (a)*" is a Class A misdemeanor "if it is shown on the trial of the offense" that (1) the person has previously been convicted of an offense under that subsection or (2) was, at the time of the offense, driving while intoxicated or possessed an open container.  *Id.* § 545.420(e) (emphasis added).  Subsection (f) explains that "*[a]n offense under Subsection (a)*" is a state jail felony "if it is shown on the trial of the offense" that the person has previously been convicted twice of an offense under that subsection.  *Id.* § 545.420(f)

---

[10]In *Oliva*, the court recited the plain-meaning rule and other statutory construction rules and noted that the court may also consider any prior case law that construes the statute.  548 S.W.3d at 521–22.

[11]The legislature left Subsection (c) blank.  *See* Tex. Transp. Code Ann. § 545.420(c).

15

(emphasis added). Subsection (g) states that "*[a]n offense under Subsection (a)*" is a third-degree felony "if it is shown on the trial of the offense that *as a result of the offense*, an individual suffered bodily injury." *Id.* § 545.420(g) (emphases added). And Subsection (h) explains how, in this case, the "*offense under Subsection (a)*" became a second-degree felony, i.e., based on a showing "on the trial of the offense that *as a result of the offense*, an individual suffered serious bodily injury or death." *Id.* § 545.420(h) (emphases added).

We read the language "if it is shown on the trial of" as a prefatory punishment-related phrase when reviewed in context with each Subsection's clarification that the offense is "under Subsection (a)" and because the phrase is used to raise the offense's degree based on prior convictions or on aggravating facts associated with the offense's circumstances. *See Oliva*, 548 S.W.3d at 527–28 (noting that the "if it is shown on the trial of" phrase is "strongly associated with punishment enhancements" and "seem[s] inherently to indicate something that is in addition to an element of the offense" but also noting that it is not always true that the phrase "causes a statute to prescribe a punishment issue"). In *Oliva*, the court observed that the "if it is shown on the trial of" phrase as used in Section 545.420's Subsections (e)(1) and (f) raised the offense's degree based on prior convictions, while its use in Subsections (e)(2), (g), and (h) raised the offense's degree based on aggravating facts from the offense's circumstances. *Id.* at 528 nn.60–61.

16

Thus, the offenses' required elements here, as alleged in the indictment, are the intentional or knowing use of a vehicle (Charger) in an attempt to outgain or outdistance another vehicle (the Infiniti), to prevent another vehicle (the Infiniti) from passing, or to arrive at a given destination (Chase Bank)[12] ahead of another vehicle (the Infiniti). *See* Tex. Transp. Code Ann. § 545.420(a)(1), (b)(2)(A)–(B). The required statutory elements to prove Walker's guilt are the same for both street-racing offenses, *see id.*, but the record reflects a single act of racing. Accordingly, there is a Double Jeopardy violation apparent on the face of the record. *See Aekins*, 447 S.W.3d at 279 (stating that a Double Jeopardy violation occurs if a defendant is convicted or punished for two offenses that are the same in both law and in fact); *see also Denton*, 399 S.W.3d at 545; *Gonzalez*, 8 S.W.3d at 643. We sustain Walker's third issue.

When a defendant has been prosecuted and convicted in a single criminal action of two or more offenses that constitute the same offense in violation of Double Jeopardy protections and both offenses carry the same punishment, the appellate court may strike either conviction. *See Martinez v. State*, 225 S.W.3d 550, 555 (Tex. Crim. App. 2007). As both street-racing offenses here carry the same punishment, we strike Walker's second conviction for street racing in trial court cause number F21-2458-462 (appellate cause number 02-23-00347-CR). *See id.*

---

[12]Walker and his sister had been on their way to meet their mother at the bank, which was not far from the collision site.

### III. CONCLUSION

Having sustained Walker's third issue, we vacate his street-racing conviction in trial court cause number F21-2458-462 (appellate cause number 02-23-00347-CR). Having overruled his remaining issues, we affirm the trial court's judgment in trial court cause number F21-2457-462 (appellate cause number 02-23-00346-CR) and affirm as modified the trial court's judgment in trial court cause number F21-2458-462 (appellate cause number 02-23-00347-CR). *See* Tex. R. App. P. 43.2(a)–(b).

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 8, 2024

18