**Opinion filed August 30, 2019**



### In The

# Eleventh Court of Appeals

_____

## No. 11-17-00002-CR

_____

## VIOLET MAREE WALTER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**
**Callahan County, Texas**
**Trial Court Cause No. 7137**

## O P I N I O N

At the conclusion of a joint trial, the jury convicted Appellant, Violet Maree Walter, and her husband, Phillip Jay Walter, Jr., of murder, robbery, and theft of a firearm.[1]  *See* TEX. PENAL CODE ANN. §§ 19.02, 29.02, 31.03 (West 2019).  The trial court assessed Appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for forty years for the murder conviction

_____

[1]In this opinion, we will refer to Violet Maree Walter as "Appellant" and to her husband, Phillip Jay Walter, Jr., as "Walter."

and for twenty years for the robbery conviction. The trial court also assessed Appellant's punishment at confinement in the State Jail Division of the Texas Department of Criminal Justice for a term of two years for the conviction for theft of a firearm. Additionally, the trial court ordered that the sentences are to run concurrently.[2] Appellant challenges her convictions in seven issues on appeal. We affirm.

*Background Facts*

Don Allen, a police officer with the Abilene Police Department, was found dead at his home in Clyde on August 31, 2015. Approximately one week before his death, Allen placed an advertisement on Craigslist seeking an unconventional sexual encounter. Appellant responded to Allen's post on August 29, 2015, writing: "Still looking? Sexy couple in their 20s. . . . Down for anything." For the next couple of days, Appellant and Allen e-mailed each other about the prospect of a sexual encounter between Appellant, Allen, and Walter. Eventually, Allen invited Appellant and Walter to his home in Clyde on the afternoon of August 31.

That evening, Allen's fiancée found Allen dead in their bedroom, lying facedown on the floor. Allen was wearing only a T-shirt and socks; he was otherwise naked. His hands and ankles had been bound by USB cords, with his hands tied behind his back. Another USB cord, along with Allen's shorts, was loosely wrapped around Allen's face and neck. There was no evidence of forced entry or a struggle inside the home.

One of Allen's neighbors told investigators that he saw a male and a female arrive at Allen's home that afternoon. Another one of Allen's neighbors saw a vehicle near Allen's home. The neighbor provided the police with the vehicle's make, color, and model. Investigators discovered that Walter owned a vehicle similar to the vehicle seen near Allen's home.

---

[2]We note that Walter received the same sentences.

Video surveillance from a pawn shop in Abilene showed Walter, accompanied by Appellant, pawning four video games and a woman's bracelet on the evening of August 31. The same four video games had been recently played on Allen's video game console, and Allen's fiancée identified the pawned bracelet as her bracelet. Investigators also identified Walter's fingerprint on a water bottle at Allen's home.

Appellant and Walter were subsequently arrested. Police officers searched their apartment pursuant to a search warrant. In the apartment, the police found an Abilene Police Department badge, a Taser, handcuffs, and an ASP case that had been issued to Allen as an Abilene Police Officer. Allen's firearm was returned to police by a confidential informant, and Allen's police radio was found on the side of a highway, two miles east of Clyde.

During the search of the apartment, the police also found Appellant's and Walter's cell phones. The police searched the phones pursuant to additional search warrants. Appellant's text messages to Walter revealed that they were experiencing financial difficulties at the time and were in the process of being evicted from their apartment. Appellant sent Walter several text messages on the day of Allen's death, urging Walter to do something to remedy their dire financial situation. For example, she sent Walter the following text messages on August 31: "Go f--k someone else and restore our s--t," "Hurry up and fix this," "DO SOMETHING NOW," and "You NEED to do this. Your fear of a police report versus LOSING us should be bigger. Your need to feed and house your CHILDREN should be bigger tha[n] ANYTHING."

After Appellant set up the meeting with Allen at Allen's home in Clyde, Appellant texted Walter that "[w]e have that Clyde lick," "[w]e MUST do it and do it hard," and "[t]he lick is waiting." The State presented evidence that a "lick" refers to robbery or thievery.

During closing argument, Appellant and Walter argued that Allen consented to being choked and that he died during "high-risk sex." To support this theory, the defense stressed the state in which Allen's body was found and the lack of any evidence indicating a struggle or resistance to the USB cables around his wrists or ankles.

*Analysis*

Appellant challenges her convictions in seven issues on appeal. Specifically, she asserts that (1) the trial court abused its discretion by admitting text messages from her cell phone over her objections that the evidence was irrelevant, unfairly prejudicial, and inadmissible character evidence; (2) the trial court erred by admitting three deleted text messages over her authenticity objection; (3) the trial court abused its discretion by admitting text messages over her Confrontation Clause objection; (4) the trial court abused its discretion by denying her motion for continuance; (5) the trial court abused its discretion by denying her second motion for continuance; (6) the State's evidence was insufficient to convict her of murder and robbery; and (7) the trial court erred by submitting a jury instruction on the law of parties.

*Sufficiency of the Evidence*

In her sixth issue, Appellant contends that the State's evidence was insufficient to convict her of murder and robbery. We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have

4

found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

To determine whether the State has met its burden under *Jackson* to prove a defendant's guilt beyond a reasonable doubt, we compare the elements of the crime as defined by the hypothetically correct jury charge to the evidence adduced at trial. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See id.* When, as here, the court's charge authorized the jury to convict the defendant on more than one theory, the verdict of guilt will be upheld if the evidence is sufficient on any theory authorized by the charge. *See Guevara v. State*,

152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (citing *Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992)).

The indictment charged Appellant with murder under all three statutorily defined ways to commit the offense. *See* PENAL § 19.02(b)(1)–(3). Under these statutory provisions, a person commits the offense of murder if he (1) "intentionally or knowingly causes the death of an individual," (2) "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual," or (3) "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." *Id.* These three methods of committing murder are not separate offenses but, rather, are alternative methods of committing the same offense. *Smith v. State*, 436 S.W.3d 353, 378 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

Under Section 19.02(b)(1), the indictment alleged that Appellant intentionally or knowingly caused Allen's death by asphyxiation by choking, strangling, or otherwise impeding his breathing. Under Section 19.02(b)(2), the indictment alleged that Appellant committed an act clearly dangerous to human life by choking, strangling, or otherwise impeding Allen's breathing with the intent to cause serious bodily injury. Under Section 19.02(b)(3), the indictment alleged that Appellant committed or attempted to commit robbery or felony theft and that, in the course of and in furtherance of the commission or attempt, she committed an act clearly dangerous to human life by choking, strangling, or otherwise impeding Allen's breathing. *See* PENAL § 29.02 (robbery statute); PENAL § 31.03(e)(4)(C) (theft of a firearm is a state jail felony). When an indictment alleges multiple felonies in a prosecution under Section 19.02(b)(3), the specifically named felonies

6

are not elements about which the jury must be unanimous. *White v. State*, 208 S.W.3d 467, 469 (Tex. Crim. App. 2006).

In addition to charging Appellant under multiple theories of murder, the court's charge allowed the jury to convict Appellant either as a primary actor or as a party with Walter. Under Section 7.01 of the Penal Code, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." PENAL § 7.01(a) (West 2011); *see Adames v. State*, 353 S.W.3d 854, 862 (Tex. Crim. App. 2011). The court's charge permitted the jury to find that Appellant was criminally responsible for the conduct of Walter under Section 7.02(a)(2) of the Penal Code. *See* PENAL § 7.02(a)(2). This statute provides that "[a] person is criminally responsible for an offense committed by the conduct of another if: . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.*; *see Adames*, 353 S.W.3d at 862.

Appellant asserts that the evidence is insufficient to support a conviction for murder because the evidence offered at trial established that Allen's death was accidental in nature. Appellant asserts that Allen's death was accidental because Allen engaged in "consensual asphyxia." In presenting these arguments, Appellant is making a "collective" argument in the sense that she has not differentiated her alleged conduct from that of Walter's alleged conduct. Appellant is essentially asserting that neither she nor Walter could be convicted of murder based upon her contention of Allen's alleged consensual conduct leading to an accidental result. We disagree.

Legal commentators have noted that consent is irrelevant in a murder prosecution in Texas. *See* George E. Dix & John M. Schmolesky, 43 *Texas Practice Series: Criminal Practice & Procedure* § 43.46 (3d ed. 2019) ("Consent is a criminal

7

law chameleon.  It is irrelevant in some crimes, like murder . . . .").  Section 22.06 of the Texas Penal Code provides a limited defense of consent to assaultive conduct—but only to the offenses of assault, aggravated assault, and deadly conduct. PENAL § 22.06; *see* Dix & Schmolesky, § 43.46.  The express language of Section 22.06 precludes consent as a defense if the conduct inflicts serious bodily injury.  PENAL § 22.06; *see Miller v. State*, 312 S.W.3d 209, 213 (Tex. App.— Houston [14th Dist.] 2010, pet. ref'd) ("The defense of consent is not available when the defendant threatens or inflicts 'serious bodily injury.'") (citing PENAL § 22.06(a)(1)); Dix & Schmolesky, § 43.46.  Furthermore, Professor LaFave notes that a "rough sex" defense to a murder prosecution has generally not prevailed. Wayne R. LaFave, 1 *Substantive Criminal Law* § 6.5(a) n.13 (3d ed. 2018) (referencing "inducement of erotic asphyxiation" and citing Cheryl Hanna, *Sex is Not a Sport: Consent and Violence in Criminal Law*, 42 B.C. L. REV. 239 (2001), and George E. Buzash, *The "Rough Sex" Defense*, 80 J. CRIM. L. & CRIMINOLOGY 557, 563–68 (1989)).  Thus, Appellant's assertion that Allen consented to being asphyxiated is irrelevant to our analysis.

Furthermore, the Texas Penal Code does not provide a defensive theory of "accident."  *See Rogers v. State*, 105 S.W.3d 630, 637 (Tex. Crim. App. 2003) (citing *Williams v. State*, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982)).  As noted in *Williams*, "[t]here is no law and defense of accident in the present penal code, and the bench and bar would be well advised to avoid the term 'accident' in connection with offenses defined by the present penal code."  630 S.W.2d at 644.

Appellant appears to be asserting that Allen's death was an accident because it was an unintended or unexpected result.  As such, Appellant's contention that Allen's death was an accident is a challenge to the *mens rea* required for her murder conviction.  *See Rogers*, 105 S.W.3d at 637–39; *Williams*, 630 S.W.2d at 644 (noting that, under the former Penal Code, "accident" described multiple defenses, including

an unintended result). Appellant contends that the State's evidence does not show that she had the requisite *mens rea* to commit the offense of murder because the evidence shows that Allen's death was accidental and resulted from his participation in consensual erotic asphyxia.

As noted previously, Appellant was charged with murder under all three statutorily defined ways to commit the offense. Under each of these provisions, the statutory focus, and, therefore, the gravamen of the offense, is causing the death of an individual. *Fraser v. State*, 523 S.W.3d 320, 328 (Tex. App.—Amarillo 2017, appellant's pet. ref'd, State's pet. granted). Thus, murder is a result-oriented offense—meaning that the proscribed conduct must have caused the death of the victim. *Id.*; *see Martin v. State*, 570 S.W.3d 426, 434 (Tex. App.—Eastland 2019, pet. ref'd).

While the three ways to commit murder share a common gravamen, they proscribe different forms of conduct. Furthermore, each statutory method for committing murder has a different *mens rea* component. Under Section 19.02(b)(1), the *mens rea* element requires that the accused must have intentionally or knowingly caused the death of the victim. *See Cook v. State*, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994). Thus, a conviction under Section 19.02(b)(1) requires an intent to cause death. As such, Appellant's contention that Allen's death was an accident would be relevant to a conviction under Section 19.02(b)(1) to the extent that it was an unintended result.

Under Section 19.02(b)(2), the *mens rea* element requires only that the accused must have intended to cause serious bodily injury to an individual. *See Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012) (citing *Lugo-Lugo v. State*, 650 S.W.2d 72, 81–82 (Tex. Crim. App. 1983)[3]). Thus,

_____

[3]*Lugo-Lugo* addressed Section 19.02(a)(2) of the Texas Penal Code. The version of Section 19.02(a)(2) of the Texas Penal Code addressed by the court in *Lugo-Lugo* is identical to the current Section 19.02(b)(2) under which this case was charged.

Appellant's contention that Allen's death was an accident would not be relevant to a conviction under Section 19.02(b)(2) if there was a showing that Appellant intended to cause serious bodily injury to Allen.

Murder under Section 19.02(b)(3) is known as "felony murder." *See Rodriguez v. State*, 454 S.W.3d 503, 507 (Tex. Crim. App. 2014). Felony murder is the commission of a killing while in the course of committing another felony, coupled with committing or attempting to commit an act "clearly dangerous to human life." PENAL § 19.02(b)(3). Felony murder is an unintentional murder committed in the course of committing a felony. *Threadgill v. State*, 146 S.W.3d 654, 665 (Tex. Crim. App. 2004). The State must prove the elements of the underlying felony, including the culpable mental state for that felony, but no culpable mental state is required for the murder committed. *Lomax v. State*, 233 S.W.3d 302, 306–07 (Tex. Crim. App. 2007). Thus, the plain language of the felony murder statute requires proof of the underlying felony, but it does not require any proof of an accompanying mental state with regard to either causing the death of another or committing an act clearly dangerous to human life. *See id.* at 307 & n.16. Thus, Appellant could have been convicted of felony murder under Section 19.02(b)(3) without a showing that she intended to kill Allen.

Appellant also asserts that the evidence is insufficient to show that she and Walter caused Allen's death. In a murder prosecution, the State must prove beyond a reasonable doubt that the injuries inflicted by the defendant caused the death of the decedent. *Reeves v. State*, 101 S.W.2d 245, 246 (Tex. 1937); *Martin*, 570 S.W.3d at 434; *Hutcherson v. State*, 373 S.W.3d 179, 187 (Tex. App.—Amarillo 2012, pet. ref'd). Appellant appears to be asserting that Allen's consensual participation in risky behavior constituted a concurring cause that precluded her criminal responsibility for his death.

"A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." PENAL § 6.04(a). Under Section 6.04, a "but for" causal connection must exist between the defendant's conduct and the resulting harm to find the defendant criminally responsible. *Pena v. State*, 522 S.W.3d 617, 624 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). If a concurrent cause is present, two possible combinations exist to satisfy Section 6.04's "but for" requirement: (1) the defendant's conduct may be sufficient by itself to have caused the harm, regardless of the existence of a concurrent cause, or (2) the defendant's conduct and a current cause together may be sufficient to have caused the harm. *Id.* (citing *Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986)). However, a defendant cannot be convicted if the concurrent cause is clearly sufficient, by itself, to produce the result and the defendant's conduct, by itself, is clearly insufficient. *Id.* Thus, if the injuries caused by the defendant contributed to the death of the deceased, he is responsible even though other contributing causes existed. *Wright v. State*, 388 S.W.2d 703, 706 (Tex. Crim. App. 1965); *Martin*, 570 S.W.3d at 434.

With these legal principles in mind, we first direct our attention to the offense of murder under Section 19.02(b)(2). With respect to the *mens rea* element, a conviction under Section 19.02(b)(2) requires a showing that the defendant acted with the conscious objective or desire to create a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of any bodily member or organ. *Lugo-Lugo*, 650 S.W.2d at 81; *see* PENAL § 1.07(a)(46) (West Supp. 2018) (defining "serious bodily injury"), § 6.03(a) (West 2011) (defining when a person acts "intentionally"). Additionally, the State must show that the defendant committed an act clearly dangerous to human life that caused the death of the decedent. *Lugo-Lugo*, 650 S.W.2d at 81. This element requires that the act intended

to cause serious bodily injury must be "objectively *clearly dangerous to human life*." *Id.*

Dr. Tasha Greenberg, a deputy medical examiner at the Tarrant County Medical Examiner's Office, performed an autopsy on Allen's body. Dr. Greenberg testified that she observed multiple areas of bleeding "into the muscles of the front of the neck," along with a fracture of the thyroid cartilage, specifically the right cornu. There were also lacerations of the lower lip. Dr. Greenberg determined that the cause of death was asphyxia, which she described as a lack of oxygen to the brain. The evidence of injury to the neck indicated to her that there was a "compression of the vessels in the neck." Dr. Greenberg also testified that there was a likelihood that pressure was applied to Allen's chest or back.

Dr. Greenberg did not see any evidence that the USB cord that was found around Allen's neck was used as a ligature. In this regard, this cord was somewhat loose around Allen's neck. Dr. Greenberg testified that the lack of an imprint on Allen's neck indicated that a broader or softer object was used to asphyxiate Allen.

Two pieces of a braided leather belt were found near Allen's body. Allen's fiancée testified that this belt was neither her belt nor Allen's belt. Allen's father testified that this belt was smaller than the belts found inside the home that belonged to Allen. DNA testing of both ends of the belt revealed the presence of DNA from three contributors, and Appellant and Walter could not be excluded as the contributors. Additionally, Allen could not be excluded as a contributor of DNA on one end of the belt. Walter could not be excluded as a contributor of DNA found on swabs taken from Allen's neck, and Walter's DNA was also not excluded from DNA recovered from the USB cords wrapped around Allen's wrists.

Dr. Greenberg determined that the manner of death was homicide. "Homicide" is generally defined as "[t]he killing of one person by another." *Homicide*, BLACK'S LAW DICTIONARY (10th ed. 2014). She testified that choking

someone to render him or her unconscious would be an act that would be clearly dangerous to human life and that choking someone to the point of unconsciousness could result in serious bodily injury. She further opined that voluntary choking is dangerous.

Dr. Greenberg's testimony that choking someone to the point of unconsciousness could constitute serious bodily injury is consistent with caselaw finding that the act of choking a person can constitute serious bodily injury. We determined in *Akbar v. State*, 660 S.W.2d 834, 835–36 (Tex. App.—Eastland 1983, pet. ref'd), that the act of choking a person to the point that they almost blacked out could constitute evidence of serious bodily injury because the jury could draw the inference that the act created a substantial risk of death. In *Akbar*, we cited *Morales v. State*, 633 S.W.2d 866, 868 (Tex. Crim. App. 1982), for the proposition that it is common knowledge that the throat is a particularly vulnerable part of the body. *Id.* at 836.

Relying upon *Akbar*, we determined in *Comeaux v. State*, No. 11-10-00308-CR, 2012 WL 2045950, at *2 (Tex. App.—Eastland June 7, 2012, pet. ref'd) (mem. op., not designated for publication), that choking a person to the point of unconsciousness can constitute serious bodily injury. We noted testimony in *Comeaux* from an emergency room physician to the effect that choking someone creates a substantial risk of death because it carries the risk of breaking the hyoid bone, which stabilizes the windpipe and voice box, as well as the risk of brain damage. In *Comeaux*, we also cited cases from other courts finding that the act of choking a person to the point of unconsciousness constitutes serious bodily injury. 2012 WL 2045950, at *2 (citing *Chavez v. State*, No. 04-07-00741-CR, 2008 WL 5050549, at * 2 (Tex. App.—San Antonio Nov. 26, 2008, pet. ref'd) (mem. op., not designated for publication) (relying on *Akbar*); *In re J.A.P.*, No. 03-02-00112-CV, 2002 WL 31317256, at *3 (Tex. App.—Austin Oct. 17, 2002, no pet.) (not

designated for publication) (victim choked to the point of unconsciousness, and *Akbar* cited in holding that choking created a substantial risk of death and, thus, was serious bodily injury); *Kaufman v. State*, No. 13-01-507-CR, 2002 WL 34230974, at *2–3 (Tex. App.—Corpus Christi Aug. 22, 2002, no pet.) (choking of victim created substantial risk of death)).

As we previously noted, consent is not a defense to a murder prosecution. Thus, while Dr. Greenberg could not rule out that Allen died during a sex act that he consented to, that fact is irrelevant to our analysis. Viewing the evidence in the light most favorable to the jury's verdict, a rational factfinder could have determined that Appellant and Walter intentionally caused seriously bodily injury to Allen by choking him to the point of unconsciousness and, ultimately, death. *See Akbar*, 660 S.W.2d at 835–36. Furthermore, choking a person to death is objectively an act that is clearly dangerous to human life. *See Lugo-Lugo*, 650 S.W.2d at 81.

Additionally, even if we assume that Allen initially consented to being asphyxiated to some degree and that consent could be a valid concurrent cause under the law, the evidence in this case would permit a rational factfinder to determine that Appellant's and Walter's conduct was, at a minimum, a concurrent cause of Allen's death. As noted above, Allen was found with his hands bound behind his back. The evidence indicates that the device used to choke him was not around his neck at the time that his body was discovered. Accordingly, under Section 19.02(b)(2), the evidence was sufficient to support Appellant's conviction for murder.

The evidence in this case, when viewed in the light most favorable to the jury's verdict, also supports a finding under Section 19.02(b)(1) that Appellant and Walter intentionally caused Allen's death. Mental culpability is a question of fact to be determined by the jury from all the facts and circumstances in evidence. *Hemphill v. State*, 505 S.W.2d 560, 562 (Tex. Crim. App. 1974). Intent is of such a nature that it is most often proven through circumstantial evidence surrounding the

crime. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991). As recently noted by the Texas Court of Criminal Appeals:

> By its nature, a culpable mental state must generally be inferred from the circumstances. We cannot read an accused's mind, and absent a confession, we must infer his mental state from his "acts, words and conduct." The culpable mental state for murder can be inferred from a defendant's motive, his attempts to conceal the body, and implausible explanations to the police. The defendant's culpable mental state may also be inferred from the extent of the victim's injuries.

*Nisbett v. State*, 552 S.W.3d 244, 267 (Tex. Crim. App. 2018) (footnotes omitted).

The specific intent to cause death is often inferred from the use of a deadly weapon. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). This case does not involve the use of a deadly weapon per se. However, the circumstances surrounding Allen's death supports an inference that Appellant and Walter intended to cause Allen's death. We first note that, when Appellant texted Walter about Allen, she texted: "We MUST do it and do it hard." Allen was found with his hands bound behind his back. The device used to choke him was not around his neck at the time his body was discovered. The State theorized that the braided leather belt that was found near Allen's body was the murder weapon, and the State's theory was consistent with Dr. Greenberg's theory of the instrument used to asphyxiate Allen. Assuming the braided leather belt was used in this manner, it was used to the extent that it broke into two pieces. Furthermore, Appellant and Walter could not be excluded as the contributors of the DNA from either end of the belt. Additionally, Dr. Greenberg opined that there was a likelihood that pressure was applied to Allen's chest or back. Thus, Appellant and Walter did not just choke Allen—they choked him to death. Viewing the evidence in the light most favorable to the verdict, a rational jury could have determined that Appellant and Walter intended to cause Allen's death.

In her sixth issue, Appellant also challenges the sufficiency of the evidence for her conviction for robbery. The indictment alleged that, while in the course of committing a theft, and with the intent to obtain and maintain control over property, to wit: a police badge, an ASP baton, or a Taser, Appellant intentionally, knowingly, or recklessly caused bodily injury to Allen. As relevant to this case, Section 29.02 of the Penal Code provides that a person commits the offense of robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally, knowingly, or recklessly causes bodily injury to another." PENAL § 29.02(a)(1). Theft is the unlawful appropriation of property "with intent to deprive the owner of the property." *Id.* § 31.03(a). "'In the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id.* § 29.01(1).

"Robbery is a form of assault." *Ex parte Hawkins*, 6 S.W.3d 554, 560 (Tex. Crim. App. 1999). The gravamen of the offense of robbery is the assaultive conduct against the victim. *Jones v. State*, 323 S.W.3d 885, 889 (Tex. Crim. App. 2010). Appellant asserts that the State failed to establish that she caused bodily injury to Allen while acting with the requisite *mens rea*. She contends that the theft of property in this case was of a spontaneous nature and was not necessarily premeditated.

The factor that "elevates the occurrence of theft to robbery is the presence, at the time of, or prior to, the [causation of bodily injury], of the intent to obtain or maintain control of the victim's property." *Nelson v. State*, 848 S.W.2d 126, 132 (Tex. Crim. App. 1992); *see Cooper v. State*, 67 S.W.3d 221, 223 (Tex. Crim. App. 2002) (quoting *Nelson*). Thus, in a robbery case, there must be a nexus between the assault and the theft. *Sorrells v. State*, 343 S.W.3d 152, 157 (Tex. Crim. App. 2011) (citing *Cooper*, 67 S.W.3d at 223). This connection may be inferred when both

offenses occur in close temporal proximity. *Cooper*, 67 S.W.3d at 224. "The general rule is still that a theft occurring immediately after an assault will support an inference that the assault was intended to facilitate the theft." *Id.*; *see Sorrells*, 343 S.W.3d at 157–58.

Robbery is not one of the three enumerated offenses to which the statutory defense of consent applies. PENAL § 22.06(a). Accordingly, Appellant's assertion that Allen consented to being choked is not legally relevant to our analysis of her robbery conviction. As we have previously determined, the evidence establishes that Allen was intentionally choked to the point of unconsciousness and, ultimately, death. This evidence supports a finding of bodily injury. In fact, this evidence supports a finding of serious bodily injury and murder. The general rule acknowledged in *Cooper* is applicable to this case because the theft of property occurred immediately after the assault, thus giving rise to an inference that the assault was intended to facilitate the theft. *Cooper*, 67 S.W.3d at 224.

Additionally, we have evidence that Appellant and Walter were in dire financial straits. As noted by the Texas Court of Criminal Appeals in *Nelson*, a defendant's financial difficulties provide a basis for a rational trier of fact to conclude that the defendant had a motive to commit theft either prior to or at the time of an assault. 848 S.W.2d at 132. Appellant used threatening language with Walter in the text messages between the two urging him to "fix" their financial situation, including engaging in illegal activities. In fact, Appellant earlier told Walter to "[c]hoke him" in reference to an unknown male when Walter texted Appellant that the unknown male "can't/won't help."

Furthermore, when Appellant informed Walter about Allen, she referred to Allen as "that Clyde lick." Appellant contends that her use of "lick" was prostitution parlance. However, the State presented evidence that a "lick" refers to robbery or thievery. Furthermore, several published cases refer to the term "lick" as involving

robbing or stealing. *Walter v. State*, 267 S.W.3d 883, 887 (Tex. Crim. App. 2008); *Amador v. State*, 376 S.W.3d 339, 341 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *Medina v. State*, 367 S.W.3d 470, 473 (Tex. App.—Texarkana 2012, no pet.). Viewing the combined and cumulative force of all the evidence in the light most favorable to the verdict, a jury could rationally infer that Appellant and Walter assaulted Allen during the course of committing theft with the intent to obtain control over Allen's property. *See Jackson*, 443 U.S. at 319; *Sorrells*, 343 S.W.3d at 156.

We overrule Appellant's sixth issue challenging the sufficiency of the evidence supporting her convictions for murder and robbery.

*Charge on the Law of Parties*

In her seventh issue, Appellant asserts that the trial court erred in giving an instruction on the law of parties for murder, robbery, and theft because there was insufficient evidence that she was criminally responsible for Walter's conduct. She contends that there is insufficient evidence that she had the specific intent to promote or assist Walter in the commission of the offenses. While Appellant asserts that there is a lack of evidence of her status as a party, she does not seek an acquittal of her conviction on this basis under *Jackson v. Virginia*. *See Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003) (noting that an appellate acquittal is the remedy for a successful challenge to the legal sufficiency of the evidence under *Jackson v. Virginia*); *see also Wooley v. State*, 273 S.W.3d 260, 268 & nn.12–13 (Tex. Crim. App. 2008). Instead, Appellant asserts that there was an error in the jury charge that requires a reversal and remand for a new trial.

We review a claim of jury charge error using the procedure set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). *See State v. Ambrose*, 487 S.W.3d 587, 594 (Tex. Crim. App. 2016). Our first duty in analyzing a jury charge issue is to decide whether error exists. *Arteaga v. State*, 521 S.W.3d

329, 333 (Tex. Crim. App. 2017) (citing *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009)).  If error exists, we must determine whether the error caused sufficient harm to warrant reversal.  *Id.*  If a timely objection was lodged at trial, reversal is required if the error resulted in "some harm" to the defendant.  *Elizondo v. State*, 487 S.W.3d 185, 204 (Tex. Crim. App. 2016).  Appellant objected to the inclusion of the instruction on the law of parties in the trial court's charge based on her contention that there was no evidence to support its submission.[4]  Appellant asserts that she has suffered some harm requiring reversal.  Because we conclude that the trial court's charge was not erroneous in this case, we do not conduct a harm analysis.  *See Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015) (citing *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012)).

Generally, the trial court may instruct the jury on the law of parties if "there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties." *Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999).  "Regardless of whether it is pled in the charging instrument, liability as a party is an available legal theory if it is supported by the evidence." *In re State ex rel. Weeks*, 391 S.W.3d 117, 124 (Tex. Crim. App. 2013).  The State does not have to prove it is correct regarding the defendant's participation as a party; instead, the State must only show that the evidence raises the issue to be entitled to its submission.  *Id.* at 125.  Thus, a trial court errs by submitting an instruction under the law of parties if the evidence adduced at trial would not support a jury verdict under the law of parties.  *Ladd*, 3 S.W.3d at 564.

---

[4]Appellant did not object to the particular manner in which the trial court's charge addressed her status as a party in an attempt to narrow or modify the language of the charge.  *See Ferreira v. State*, 514 S.W.3d 297, 302 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *Vasquez v. State*, 389 S.W.3d 361, 368 (Tex. Crim. App. 2012)).

The jury is entitled to consider the events that took place before, during, and after the commission of the crime. *See Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004); *Goff v. State*, 931 S.W.2d 537, 545 (Tex. Crim. App. 1996). "There must be sufficient evidence of an understanding and common design to commit the offense." *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012) (citing *Guevara*, 152 S.W.3d at 49). "Each fact need not point directly to the guilt of the defendant, as long as the cumulative effect of the facts are sufficient to support the conviction under the law of parties." *Id.* (citing *Guevara*, 152 S.W.3d at 49). Mere presence of a person at the scene of a crime—either before, during, or after the offense—or even flight from the scene, without more, is insufficient to sustain a conviction as a party to the offense; however, combined with other incriminating evidence, it may be sufficient to sustain a conviction. *Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985); *accord Gross*, 380 S.W.3d at 186. Additionally, allegations that a party is guilty under the law of parties need not be specifically pleaded in the indictment. *See Barrera v. State*, 321 S.W.3d 137, 144 n.1 (Tex. App.—San Antonio 2010, pet. ref'd).

As noted previously, the trial court's charge provided that Appellant was criminally responsible for Walter's conduct under the law of parties if she intentionally promoted or assisted the commission of the charged offenses by soliciting, encouraging, directing, aiding, or attempting to aid Walter to commit the charged offenses. *See* PENAL § 7.02(a)(2). Prior to the commission of the offenses, Appellant was the one who initiated and maintained contact with Allen through Craigslist. Additionally, Appellant sent text messages to Walter before meeting Allen; from these messages, a jury could have reasonably inferred that the couple planned to rob and possibly even murder Allen. *See Gross*, 380 S.W.3d 186 (to prove party status, there must be "sufficient evidence of an understanding and common design to commit the offense").

20

Appellant was present at the scene of the crime: another circumstance relevant for proving party status. *See Medellin v. State*, 617 S.W.2d 229, 231 (Tex. Crim. App. 1981). There was also DNA evidence from which the jury could have inferred that both Appellant and Walter asphyxiated Allen. Additionally, on the day that Allen died, Appellant deleted the e-mail account she used to communicate and set up the rendezvous with Allen. She also accompanied Walter to the pawn shop to sell Allen's and Allen's fiancée's belongings. Moreover, she sent text messages that evening that suggested she was involved in the sale of Allen's stolen police equipment. Thus, the evidence as a whole shows that Appellant and Walter actively participated in the asphyxiation of Allen and the underlying offenses. Therefore, we hold that there was sufficient evidence from which a jury could have inferred that Appellant was a party to the offenses of murder, robbery, and theft.

Moreover, if the evidence "clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless." *Ladd*, 3 S.W.3d at 564–65 (quoting *Black v. State*, 723 S.W.2d 674, 675 (Tex. Crim. App. 1986)). An appellant is not harmed by the inclusion of an instruction on the law of parties if the jury "almost certainly did not rely upon the parties instruction in arriving at its verdict, but rather based the verdict on the evidence tending to show appellant's guilt as a principal actor." *Id.* at 565. If guilt as a party would be "an irrational finding under the evidence, then it is highly unlikely that a rational jury would base its verdict on a parties theory." *Cathey v. State*, 992 S.W.2d 460, 466 (Tex. Crim. App. 1999). As discussed above, the evidence was sufficient to establish Appellant's guilt as a primary actor. Thus, even if we assume error in the jury charge by the inclusion of the instruction on the law of parties, the error is harmless because the evidence supports Appellant's guilt as a primary actor. *See Cathey*, 992 S.W.2d at 466. We overrule Appellant's seventh issue.

21

*Admissibility of Text Messages*

In her first issue, Appellant contends that the trial court erred by admitting approximately 900 text messages recovered from her cell phone that she either sent or received over a four-day period. She contends that the admission of these text messages violated Rules 402, 403, and 404(b) of the Texas Rules of Evidence. *See* TEX. R. EVID. 402, 403, 404(b).

Whether to admit evidence at trial is a preliminary question to be decided by the trial court. TEX. R. EVID. 104(a); *Tienda v. State*, 358 S.W.3d 633, 637–38 (Tex. Crim. App. 2012). We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)).

The State sought to offer a thirty-one-page document containing the text messages. This document contained the cell phone numbers of the sender and the receiver of the text messages, the date and time of the text messages, and the content of the text messages. Walter initially lodged a general relevancy objection to the entire body of text messages. The trial court advised Walter's counsel that he would need to identify the specific text messages to which Walter objected and the reason for the objections. Walter's counsel responded that it would take "all day" to identify the text messages that were not relevant.

The prosecutor responded to the general relevancy objection by asserting that the whole body of the text messages revealed that Appellant engaged in "habitual texting" during the four-day period with the exception of a "dead period" during the time that Appellant and Walter were at Allen's house. The prosecutor further advised the trial court that the content of the text messages was the most important

22

aspect of them. The prosecutor specified that the text messages between Appellant and Walter were the most important ones.

Walter's counsel then identified specific text messages to which he objected under Rule 403 on the basis that they were "extremely prejudicial." Walter's counsel also objected to specific text messages on the basis that the State had not provided notice of its intent to offer the text messages as extraneous offenses under Rule 404(b).

At the conclusion of Walter's counsel presenting objections to the text messages, Appellant's trial counsel advised the trial court that Appellant was making the same objections. *See Martinez v. State*, 833 S.W.2d 188, 191 (Tex. App.—Dallas 1992, pet. ref'd) (citing *Woerner v. State*, 576 S.W.2d 85, 86 (Tex. Crim. App. 1979)) (A defendant may preserve error by adopting a codefendant's objections provided there is sufficient indication in the record of his intent to adopt the objections.); *see also Enlow v. State*, 46 S.W.3d 340, 346 (Tex. App.—Texarkana 2001, pet. ref'd). The trial court overruled all of the objections and admitted the document with the text messages. The prosecutor subsequently requested a police officer to read approximately sixty-five text messages to the jury.

Rule 401 provides that evidence is "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." TEX. R. EVID. 401. Relevant evidence is generally admissible whereas "[i]rrelevant evidence is not inadmissible." TEX. R. EVID. 402.

With respect to Appellant's general relevancy objection, the Texarkana Court of Appeals recently addressed a similar objection in *Kelso v. State*. 562 S.W.3d 120, 136 (Tex. App.—Texarkana 2018, pet. ref'd). The defendant in *Kelso* objected on the ground of relevancy to "a hundred thousand some odd text messages." *Id.* Like Appellant in this appeal, the defendant in *Kelso* asserted that the State needed to

offer individual text messages rather than offer the whole body of the text messages. *Id.* The Texarkana court determined that the defendant did not preserve error because she did not specifically point out which text messages were inadmissible. *Id.* The court cited *Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009), for the following proposition: "When an exhibit contains both admissible and inadmissible evidence, the burden is on the objecting party to specifically point out which portion is inadmissible." *Id.*; *see Richter v. State*, 482 S.W.3d 288, 298 (Tex. App.—Texarkana 2015, no pet.). As further noted by the court: "A trial court is not obligated to search through an exhibit and segregate the admissible evidence from the inadmissible." *Kelso*, 562 S.W.3d at 136 (citing *Whitaker*, 286 S.W.3d at 369). "Instead, 'the trial court may safely admit it or exclude it all, and the losing party, no matter who he is, will be made to suffer on appeal the consequences of his insufficiently specific offer or objection.'" *Id.* (quoting *Richter*, 482 S.W.3d at 298).

We agree with the reasoning in *Whitaker* and *Kelso*. By failing to identify specific text messages that she asserted were irrelevant, Appellant failed to preserve error on her general relevancy objection. Furthermore, the whole body of text messages for the four-day period was relevant to establish Appellant's and Walter's involvement in the activities that occurred at Allen's home on the afternoon of August 31 because there was no texting activity for an approximately 106-minute period that afternoon.

"Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence [is] more probative than prejudicial." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002) (citing *Montgomery*, 810 S.W.2d at 376). When we review a trial court's determination under Rule 403, we reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting *Montgomery*, 810 S.W.2d at 392). An analysis under Rule 403 includes, but is not limited to, the following

factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). Rule 403, however, does not require that the balancing test be performed on the record. *Greene v. State*, 287 S.W.3d 277, 284 (Tex. App.—Eastland 2009, pet. ref'd). By its express terms, evidence is not excludable under Rule 403 for merely being prejudicial—the rule applies to evidence that is unfairly prejudicial. Evidence is unfairly prejudicial when it has an undue tendency to suggest an improper basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000); *Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd).

Appellant additionally asserts on appeal that the whole body of text messages should have been excluded under Rule 403. Walter's counsel also lodged an objection that admitting the entire body of text messages would confuse the jury. As was the case with the general relevancy objection, the Rule 403 objection to the entire body of text messages did not preserve error for appellate review. *See Whitaker*, 286 S.W.3d at 369; *Kelso*, 562 S.W.3d at 136.

Appellant also asserts on appeal that many of the text messages contained references to illegal drug activity and prostitution and that they contained prejudicial sexual content and profanity. Based on these contentions, Appellant contends that the admission of many of the text messages violated Rule 403 and that their admission was for an improper purpose under Rule 404(b). Neither Appellant nor Walter presented these complaints to the trial court. Specifically, the defendants did not object to the text messages on the basis that they contained evidence of drug activity or prostitution. Accordingly, these complaints were not preserved for appellate review. *See* TEX. R. APP. P. 33.1.

We direct our attention to the specific text messages to which Walter's counsel objected. Counsel objected to a text message sent from Appellant's phone at 9:59 a.m. on August 31, 2015, to Walter, which read: "Choke him." Appellant texted this message in response to a text message from Walter that stated: "He can't/won't help." Walter's counsel asserted that the "choke him" text message was "extremely prejudicial" and that it was devoid of context. Walter's counsel also asserted that the State did not give notice under Rule 404(b) of its intent to rely on this text message. He asserted that the "choke him" text message was subject to the notice requirement of Rule 404(b) because it appeared that Appellant was trying to encourage Walter to commit a felony assault.

Walter's counsel next challenged a text message that Appellant sent Walter at 1:10 p.m. on August 31, 2015, which read: "You NEED to do this. Your fear of a police report versus LOSING us should be bigger. Your need to feed and house your CHILDREN should be bigger tha[n] ANYTHING else. So swallow being a p---y and use your b---s to go f--k someone hard enough that your loved ones aren't getting raped." Walter's counsel asserted that this text message was without context, that its probative value was low, and that its prejudicial value was high. He sought the exclusion of this text message under Rule 403. He also asserted that the State had not complied with the notice requirement of Rule 404(b), which he asserted was necessary because it appeared that, in the text message, Appellant was encouraging Walter to commit a crime.

With respect to the "choke him" text message, we previously addressed the relevancy of this text message in our review of the sufficiency of the evidence. We noted that this text message was indicative of the Walters' dire financial situation and Appellant's pleas to Walter to "fix" their desperate financial circumstances. There is no question that the "choke him" text message was prejudicial. The bigger questions are whether it was unfairly prejudicial and, if so, whether its probative

value was substantially outweighed by the danger that it was unfairly prejudicial. We conclude that the trial court did not abuse its discretion by answering both of these questions in the negative. Appellant sent the "choke him" text message to Walter approximately six hours prior to meeting with Allen. She sent it in response to a message from Walter saying that a person "can't/won't help." The text message indicates the desperate measures Appellant wanted Walter to take on the day of Allen's death to remedy their financial situation.

The "you NEED to do this" text message is less prejudicial than the "choke him" text message. Appellant sent this text message to Walter approximately two and one-half hours prior to the meeting with Allen. It followed several text messages from Appellant to Walter wherein she told him: "Hurry up and fix this," "Fix this ALL, Phillip," "DO SOMETHING NOW," and "I've already TOLD you what you need to do." The "you NEED to do this" text message was relevant to show the Walters' financial situation and also indicated the desperate measures that Appellant wanted to take. As was the case with the "choke him" text message, we conclude that the trial court did not abuse its discretion by overruling Appellant's Rule 403 objection to the "you NEED to do this" text message.

With respect to the Rule 404(b) objections, neither Appellant nor Walter objected to the two text messages on the basis that the State sought to offer the messages for an improper purpose under Rule 404(b). Instead, Walter's counsel asserted that the State failed to give notice as required by Rule 404(b) of its intent to offer the extraneous offenses counsel alleged are reflected in the two text messages. Rule 404(b)(2) allows admission of certain extraneous offenses, provided that, "[o]n timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence—other than that arising in the same transaction—in its case-in-chief." TEX. R. EVID. 404(b)(2); *see Hayden v. State*, 66 S.W.3d 269, 271 (Tex. Crim. App.

2001). The State asserts that Appellant did not make a timely request for notice under Rule 404(b). Our review of the record does not indicate that Appellant made a request for notice under Rule 404(b) as required by the rule. Accordingly, Appellant waived notice pursuant to the rule. *See Espinosa v. State*, 853 S.W.2d 36, 38 (Tex. Crim. App. 1993).

Irrespective of the absence of a request from Appellant for notice under Rule 404(b), the trial court did not abuse its discretion by determining that the two texts did not contain information about extraneous offenses or acts as contemplated by Rule 404(b). To implicate Rule 404(b), there must be actual conduct that alone or in combination with these thoughts could constitute a bad act, wrong, or crime. *Massey v. State*, 933 S.W.2d 141, 154 (Tex. Crim. App. 1996). Statements about anticipated acts are mere inchoate thoughts that are not excludable under Rule 404(b). *Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993). The two text messages challenged by Appellant did not address past acts but, rather, concerned future acts that Appellant anticipated or expected Walter to perform. We overrule Appellant's first issue.

Appellant's third issue also concerns the text messages that the trial court admitted into evidence. She contends that the trial court abused its discretion by overruling her objection to any text message that she received from someone else. She asserted that the admission of these text messages would violate her Sixth Amendment right to confrontation. We disagree.

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause bars the admission of out-of-court testimonial hearsay statements of a witness unless (1) the witness is unavailable to testify and (2) the defendant had a prior opportunity to cross-examine the witness. *Crawford v.*

*Washington*, 541 U.S. 36, 53–54 (2004); *Render*, 347 S.W.3d at 917. "Post-*Crawford*, the threshold question in any Confrontation Clause analysis is whether the statements at issue are testimonial or nontestimonial in nature." *Render*, 347 S.W.3d at 917.

Generally speaking, a hearsay statement is testimonial when the surrounding circumstances objectively indicate that the primary reason the statement was made was to establish or prove past events potentially relevant to later criminal prosecution. *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008) (citing *Davis v. Washington*, 547 U.S. 813, 822–23 (2006)). The Supreme Court has not provided a comprehensive definition to be used when determining whether statements are testimonial. *Id.*; *Wells v. State*, 241 S.W.3d 172, 175 (Tex. App.—Eastland 2007, pet. ref'd). However, it has identified three kinds of statements that could be regarded as testimonial: (1) ex parte in-court testimony or its functional equivalent that declarants would reasonably expect to be used prosecutorially; (2) statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and (3) statements that were made under circumstances that would lead an objective witness to reasonably believe that the statements would be available for use at a later trial. *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010). We review a Confrontation Clause ruling de novo. *See De La Paz*, 273 S.W.3d at 680.

"Testimonial" statements are typically solemn declarations made for the purpose of establishing some fact. *See Russeau v. State*, 171 S.W.3d 871, 880 (Tex. Crim. App. 2005). The text messages in this case are informal, and their subject and method of communication weigh against a finding that they are testimonial statements. *See Crawford*, 541 U.S. at 51 (noting that testimonial statements are typically "formalized" materials that "were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available

for use at a later trial" as opposed to informal text messages); *Bryant v. State*, No. 01-14-00963-CR, 2015 WL 9478194, at *5–6 (Tex. App.—Houston [1st Dist.] Dec. 29, 2015, pet. ref'd.) (mem. op., not designated for publication) (same). Furthermore, many of the text messages were between Appellant and Walter, and the communications concerned their interaction with Allen. A coconspirator's statements in furtherance of the conspiracy are generally considered nontestimonial. *See Crawford*, 541 U.S. at 56. Accordingly, the trial court did not err by overruling Appellant's Confrontation Clause objection to the admission of the text messages. We overrule Appellant's third issue.

*Authentication of Deleted Text Messages*

In her second issue, Appellant argues that the State did not properly authenticate three deleted text messages recovered from her phone. Christian Ledbetter, a DPS agent assigned to the Secret Service, performed a forensic examination of Appellant's cell phone. Using computer software, he recovered the three deleted text messages from the phone. These deleted text messages were sent from Appellant's phone: "[H]e'll do the handheld plus clips for $275," "You'd kept the Taser tho," and "Well, a Taser." Agent Ledbetter was unable to determine to whom the first two deleted text messages were sent. The third text message was sent to someone referred to as "Archangel" in Appellant's cell phone.

Walter's counsel objected to the deleted text messages on the basis that Agent Ledbetter did not know the identity of the parties to the conversations involving the deleted text messages. Appellant's counsel made the same objection. The trial court overruled these objections. Appellant asserts that the trial court erred in overruling the authenticity objection because the link to Appellant authoring these deleted texts was too tenuous.

To properly authenticate a piece of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it

is." TEX. R. EVID. 901(a). It is within the jury's purview to "determine whether an item of evidence is indeed what its proponent claims; the trial court need only make the preliminary determination that the proponent of the item has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic." *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015) (citing *Tienda*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012)); *see* TEX. R. EVID. 104(a). We review a trial court's threshold determination of authenticity under an abuse of discretion standard. *Butler*, 459 S.W.3d at 600.

Appellant cites *Butler* for the proposition that Agent Ledbetter did not provide enough information to establish Appellant as the author of the deleted text messages. We first note that the State did not offer the deleted text messages as being authored by Appellant but, rather, offered them as simply being recovered from her cell phone. The trial court made this distinction when it admitted the deleted text messages. "As with other types of evidence, text messages may be authenticated by 'evidence sufficient to support a finding that the matter is what its proponent claims.'" *Id.* at 600–01 (quoting former version of TEX. R. EVID. 901(a)). Authentication of text messages may "be accomplished in myriad ways," including through the testimony of a witness with knowledge. *Id.* Agent Ledbetter testified in detail about the process he used to recover the messages from Appellant's cell phone. On this record, the trial court did not abuse its discretion by determining that Agent Ledbetter supplied sufficient evidence authenticating what the State claimed the evidence to be.

Moreover, the record does not demonstrate that Appellant was harmed by the admission of the deleted text messages. The same words of all three deleted text messages appear in the transcript of the text messages that we addressed in considering Appellant's first and third issues. Additionally, the first deleted text message was a reference to Allen's firearm and the Walters' efforts to sell it. There

were other references to the firearm in the text messages, including a text message near the same time, which read: "I can get that sold for $275-just the pow pow." The second and third messages referred to the stolen Taser. There was a text message stating: "Leaves you with the electrifying one," after the text message referencing the sale of the "pow pow" for $275. Additionally, there was a text message sent on September 3, 2015, specifically referencing the Taser. Finally, an acquaintance of the Walters, Tad Womack, testified that he received a phone call from Walter at 5:03 p.m. on August 31, 2015, wherein Walter asked Womack if he would like to purchase some items from a police belt, including an "officer's issued handgun" and a Taser. We overrule Appellant's second issue.

*Motions for Continuance*

In her fourth issue, Appellant contends that the trial court abused its discretion by denying her first motion for continuance for additional time to obtain certain e-mails from Allen's e-mail account. In her fifth issue, Appellant asserts that the trial court erred in denying her second motion for continuance for additional time to find Allen's missing cell phone. In both issues, Appellant contends that she was prejudiced because the missing evidence was critical to establishing her defensive theory at trial: "that Allen's death was an accident which occurred during a consensual erotic asphyxia encounter."

The Walters filed a "Joint Motion for Exculpatory Evidence and For Continuance to Obtain Same" a week prior to trial. We will refer to this motion as Appellant's first motion for continuance. The Walters asserted in this first motion that they needed additional time to secure e-mails from Allen's e-mail account that he used to communicate with Appellant through Craigslist. The Walters claimed that Allen used this account to engage in "high-risk" sex, and they sought Allen's e-mails dating back to March 1, 2015. They claimed Allen's sexual practices were "material" to the case because they

32

"contradict the Government's theory that the Defendants intentionally or knowingly killed the Deceased." In the motion, the Walters stressed the need for additional time because they could not obtain Allen's e-mails from Google without the State's assistance.

The reporter's record does not contain a transcript of a hearing on the first motion for continuance. Furthermore, there is no written order denying it. Appellant asserts that the trial court implicitly overruled the first motion for continuance by proceeding to trial. *See* TEX. R. APP. P. 33.1(a)(2)(A). Appellant contends that the trial court erred by denying the first motion for continuance because the State "inexplicitly failed to issue a search warrant to Google to obtain Allen's emails."

The second motion for continuance does not appear in the clerk's record.[5] However, there is a reporter's record from a hearing on the first morning of trial conducted on the second motion for continuance. The record indicates that the second motion for continuance was a written motion that the trial court "looked at.

The second motion for continuance concerned a request for more time to find a second cell phone owned by Allen. The prosecutor acknowledged at the hearing that a report by Texas Ranger Jason Shea mentioned a black Samsung cell phone recovered from Allen's home. However, the phone could not be located by investigators by the time of trial. The prosecutor stated that this missing cell phone was not working based on a conversation with Allen's fiancée. The Walters asserted that the phone was necessary to provide information about Allen's sexual liaisons with third parties, much like the information sought by way of the first motion for continuance. They asserted that this information was not available on any of the other devices used by Allen. The trial court orally denied the second motion for continuance and proceeded to trial. Appellant asserts on appeal that the denial of

---

[5]Appellant asserts in her brief that the trial court clerk's office was unable to find a copy of the second motion for continuance in the clerk's file.

the second motion for continuance prevented her from presenting a complete defense at trial.

We review a trial court's ruling on a motion for continuance for an abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007) (citing *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996)). A defendant must satisfy a two-prong test to show reversible error predicated on the denial of a pretrial motion for continuance. *See Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010). First, the defendant must show that "the case made for delay was so convincing that no reasonable trial judge could conclude that scheduling and other considerations as well as fairness to the State outweighed the defendant's interest in delay of the trial." *Id.* (quoting George E. Dix & Robert O. Dawson, 42 *Texas Practice Series: Criminal Practice & Procedure* § 28.56 (2d ed. 2001)). Second, the defendant must show that he was actually prejudiced by the denial of his motion. *Id.*

As noted by the court in *Gonzales*, a defendant filing a motion for continuance based upon a need for additional trial preparation must show diligence as a precondition to the motion. *Id.* (citing *Wright v. State*, 28 S.W.3d 526, 533 (Tex. Crim. App. 2000)). As noted by the court, "A request for delay to permit further investigation or other preparation for trial is based on nonstatutory and therefore equitable grounds. It is particularly within the discretion of the trial court." *Id.* at 844 n.11 (quoting Dix & Dawson, § 28.56).

Appellant's motions for continuance are in the nature of a motion seeking more time to conduct additional trial preparation. As such, Appellant was required to show diligence in seeking the information that she requested. In the absence of a reporter's record for the first motion for continuance, we are hard-pressed to find an abuse of discretion by the trial court in not granting the first motion, particularly since the motion was filed only one week prior to trial.

With respect to the second motion for continuance, the trial court confirmed that the missing cell phone had not been booked into evidence. Furthermore, the trial court received information from the prosecutor about the efforts made by investigators to find the missing phone prior to trial. It was within the trial court's purview to determine that a diligent effort had been made to find the phone or that the phone might not ever be located. Accordingly, the trial court did not abuse its discretion by overruling Appellant's motions for continuance. We overrule Appellant's fourth and fifth issues.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


August 30, 2019

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[6]

Willson, J., not participating.

---

[6]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.